CARLOS E. COLÓN, Plaintiff and Appellee, *v.* GLADYS
MELÉNDEZ, Defendant and Appellant.

No. AP-62-42.   Decided February 20, 1963.

420

*Enrique González* for appellant. *Carlos E. Colón* pro se. *José N. Dapena Laguna* and *Waldemar del Valle* for appellee.

Division composed of Mr. Justice Belaval as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The parties in the present case have four daughters born of a natural union, subsequently, the mother contracted marriage with another person. Alleging the new marital status of the mother, the father claimed the custody of the daughters, and the trial court ordered Mrs. Carmen A. Renovales de Colón, an expert in family relations to prepare a study on the conditions of both homes, for the purpose of determining which one would be the most appropriate to guarantee the welfare of the girls. After the report was rendered, the trial court required the parties to notify the court whether they were submitting the case on said report or whether they wished to introduce any other evidence. The mother answered accepting to submit the case on the report rendered and the father did not answer nor present writing whatsoever requesting an opportunity to introduce evidence against said report. After the term granted for such request had elapsed, the trial court considered the case submitted and proceeded to decide it.

Before passing on the merits of the issue in litigation it is advisable to stop to consider certain questions of law, which directly or indirectly are raised in this case.

It having been decided by this Court that Habeas Corpus is an extraordinary proceeding of a civil nature— *Vázquez v. Rivera*, 69 P.R.R. 883, 885 (Marrero, 1949)— and that appeals to this Court from the final order of any Court of First Instance are governed by § 1 of the Act of

March 12, 1903 which today is incorporated into our Code of Criminal Procedure (34 L.P.R.A. § 1773)—*Espinosa* v. *Ramírez*, 71 P.R.R. 10, 13 (De Jesús, 1950)—and after considering Rule 61 of the Rules of Civil Procedure of 1958, as amended on January 24, 1961—Rules of Practice for Puerto Rico (Civil) Supp. 1962, p. 33 (Sp. ed.)—which provides that the new rules shall only be considered as supplementary to the special provisions of the statutes on extraordinary proceedings, it is evident that the legal means by which this Court may review a final order rendered by a Part of the Superior Court of Puerto Rico in a Habeas Corpus proceeding, is by appeal, as it was understood before the new rules of procedure were adopted. The confusion on the use of the appropriate remedy of appeal arises from the flexible nature of the Habeas Corpus proceeding, which may be employed either within a criminal proceeding under way—reduction of the bail on appeal, imprisonment without filing the proper information or without holding a trial timely. etc.—or in a special civil proceeding of custody. Of course, our power to intervene by way of certiorari in the proper cases, will always remain available.

█ Although it is true that pursuant to § 2 of the Act of March 12, 1903, likewise incorporated into our Code of Criminal Procedure (34 L.P.R.A. § 1774), the appeal filed does not have the effect of suspending the family relations decreed by a Court of First Instance, this Court, in the exercise of its implied powers to achieve the most orderly and effective functioning of its jurisdiction, or in aid of said jurisdiction, may order in an appeal of evident merits, the suspension of the family relations decreed by the Court of First Instance, establishing other relations while the appeal is disposed of, if it has before it all the evidence admitted by the Court of First Instance. 2 American Jurisprudence 850, § 9, last paragraph.

■ Assuming, without deciding, that the report prepared by an expert and which is to be used in the decision of a case regulating family relations, is of the same category as a separate or confidential document on births, adoptions or social studies of a minor's family—Act No. 24 of April 22, 1931, amended by addition by Act No. 84 of June 15, 1953 (24 L.P.R.A. §§ 1135 and 1136); Act No. 85 of June 15, 1953 (32 L.P.R.A. § 2696); Rule 7.2 of the Rules of Procedure for Cases Covered by Act No. 97 of June 23, 1955 of the Supreme Court of Puerto Rico (App. to Supp. 1961, 34 L.P.R.A. 83), as soon as said report is used in the judicial adjudication of the case, as it was in this case, the parties affected and their attorneys, have the right to examine said report and the trial court is under the obligation to provide an opportunity so that the parties affected may make objections thereto or introduce evidence against the conclusions of said report.

Now we are in a position to pass on the merits of the question. The trial court, upon granting custody of the girls to the father, against the recommendations in the report of the expert gave the following reasons: "The court has had the benefit of a lengthy report submitted by the Office of Family Relations and has conferred with the parties. It appears from this report that both parties lived as husband and wife for a period of eleven years and of those relations four minor daughters were born. Plaintiff (the father) holds a better economic and social position. However, defendant (the mother) in her marriage, lives in a place which compares favorably with plaintiff's as to comfort and facilities for the growth and education of the minors."

"The father as well as the mother shows great love for their daughters and defendant is very devoted to their care."

"In the original judgment rendered in the case, the court provided that the minors were to stay fifteen days with one

party and fifteen days with the other party and this arrangement seemed satisfactory to both."

"However, considering that the girls are growing and that the three elder ones will be in school next year, the court believes that it is not beneficial for them to continue family relations in that way since they will never have the feeling of a steady home, aside from the possible damage this might bring about in their studies and social relations."

The report rendered by the expert in family relations favors giving the girls to the mother, not only because the mother's home is the more stable, but also because the girls feel better in her company. The report shows that the father would have to depend for the care of the girls on a housekeeper and in the care which his sister might be able to offer occasionally. The mother's company in the case of girls of tender age should be a controlling factor unless there is a serious moral objection, a fact which does not exist in the present case: *Muñoz* v. *Torres*, 75 P.R.R. 476, 482 (Ortiz, 1953) ; *Castro* v. *Meléndez*, 82 P.R.R. 556, 560 (Blanco Lugo, 1961).

Although it is true that according to the report, the father is in a better economic position than the mother, this would not be sufficient to award the custody to the father. *Muñoz* v. *Torres, supra*, 483. Besides, any economic disparity, if it should affect the minors' welfare, could be remedied by increasing the allowance for support of the minors, since it should be fixed according to the father's economic situation. As to the father's better social position, in view of the mother's exemplary conduct at present, within the modern concept of family relations in a democratic society, it becomes an ineffable, not to say archaic, value.

In his brief to this Court, appellee complains that his right of patria potestas may be adversely affected by a report prepared at the request of the court itself, the contents of which were unknown to him until after the case was decided.

424

We have already stated that after the report was received by the court, it gave the parties an opportunity to state whether or not they agreed to submit the case on said report, and the mother answered affirmatively and the father failed to answer at all. Naturally, the trial court interpreted his silence as an assent. As a question of law, we have decided that patria potestas is not the dominant factor in cases of family relations. *Rodríguez v. Torres*, 80 P.R.R. 751, 753 (Belaval, 1958). As to the procedural aspect of the question, since the father learned of the report afterwards, and the trial court's decision having favored him, we do not believe the question is sufficiently important to order a rehearing.

The father's only serious objection to the report is that the report concealed the fact that, beside the mother and her husband, two ladies who work in the Telephone Company in Ponce were boarding there. Perhaps this situation is due to the fact that the allowance of support of less than ten dollars a week per child is inadequate. Still of that amount there have been attempts, on several occasions, to deduct slight amounts for the days the minors spend with their father, without considering how this situation could affect the household budget of a maternal home which is supposed to be prepared to receive the minors at any moment. At any rate, if the trial court deems it convenient and it were disposed to adjust the allowance for support according to the father's economic circumstances, it could order the cessation of the aforesaid boarding arrangement, allowing the mother a reasonable period of time to dislodge the tenants from the room they occupy.

It is true that in the case of *Millán v. Solís*, 85 P.R.R. 458, 462-63 (Belaval, 1962) it was decided that the awards for support and family relations, because of their own nature, cannot be considered as having finality; but this does not mean that they are continually subject to alterations or modifica-

tions in the absence of concrete proof of moral character or of such an abandonment of the duties of maternal custody as to jeopardize the minors' welfare. We belive that these minors have the right to be spared the dramatic tension in which their parents have lived.

The mother should be granted custody of the daughters during Mondays, Tuesdays, Wednesdays, Thursdays, and Fridays until six in the afternoon of every week, and the father during Fridays after six in the afternoon, Saturdays, and Sundays until six in the afternoon when he shall return them to the mother's home every week. The father must send his daughters the amount of $37.50 weekly besides providing them with medical care, medicines, registration fees, and school uniforms they may need until another support allowance is provided by the Superior Court of Puerto Rico, Ponce Part.

The order of May 18, 1962 will be modified pursuant to the terms of this opinion.